Ruffin, Chief Justice.
 

 On the part of the defendants, several objections have been taken to the decree. The first is, that there is no proof to sustain the declaration, that the plaintiff was the purchaser from Webb of the legacy to his wife. But we think otherwise. The will of Green and the
 
 *49
 
 deed from Webb to the plaintiff are filed as exhibits; and the cause was set down to be heard upon the bill, answers and r 7 exhibits. Now, although the answers do not admit the plaintiff’s purchase, and the deed to him has not been proved in the cause; yet setting the cause down to be heard on the bill, answers and exhibits, makes the deed evidence for the plaintiff as the answers are for the defendants.
 

 It is next insisted, that the decree is erroneous in declaring the testator to have died intestate as to the negroes directed to be emancipated, and as to the property bequeathed to them. But we are of opinion, with his Honor, that the will, as to those matters, is inoperative; and, therefore, that those things are not disposed of. The will was made before the passage of the act of 1830. (See 1 Rev. Stat. ch. 111, sec.
 
 57.)
 
 Slaves have not capacity to take by Will, and a legacy to them is, like the direction for their oWn emancipation, void; and as there is no residuary clause, this property is an undisposed surplus.
 
 Sorrey
 
 v. Bright, 1 Dev. & Bat. Eq. 113; and
 
 Pendleton
 
 v.
 
 Blount.
 
 Id. 491. That is a proper fund for the satisfaction of the legacy to William Watson, upon the general principle that debts and pecuniary legacies are payable out of
 
 the
 
 surplus not given away in the first instance. It may be well, however, to notice here two other positions respecting this fund, taken for the defendants.
 

 It is said, thát the testator cannot be supposed to have intended to charge this sum of $500 on the negroes, whom, as far as he can, he emancipates; nor upon the pittance provided for them out of the personal estate after his wife’s death;' and it is thence inferred that the charge is upon the other parts of the personalty. It is, no doubt true, that the testator had no actual intention to make these negroes liable for the legacy to his step-son, and was not aware that the provisions of his will in their favour, were mere nullities. But, without any particular charge on it, and independent of any intention, the law throws the burden upon this residue; unless there be either an exemption of the residue, or the charge be fixed, by plain words or as plain implication, oh other property exclusively. We have no such exemption here. Had the testator known that his direction for emancipation! must
 
 *50
 
 fail, we cannot see that he would have preferred that this fund should not pay his debts and general legacies, but go to his next of kin, to the disappointment of his specific legatees.
 

 Then, it is said again, that this fund is not immediately applicable to those purposes, but only the remainder after the death of the wife; because she takes a life estate in these negroes under the will.. We cannot think so. In the first and second clauses, the testator gives to his wife for life, his land, house-hold and kitchen furniture, his stocks of horses, cattle, hogs and sheep, crops of diiferent kinds and provisions on hand, all specifically; and sixteen negroes, by name; and after the death of the wife, to P. Powell and M. A. Watson, equally to be divided between them. Then in the 3rd clause, he directs*that his negroes, Ben and Nancy, (now mentioned for the first time.) should, at the death of his wife, be liberated; and desires his friend, H. Garrett, whom he appoints executor, to attend to the same; and he farther giv.es to those slaves, at the death of his wife, a small piece of his land, and some trifling articles of personal property. It may be admitted, as a probable conjecture, that the testator did not mean those favorite negroes to be separated from the others, and from their old mistress, during her life. But there is no such plain demonstration of any intention on the point, as will authorise the Court to decree whose property they are, upon the footing of an intention in the testator, instead of leaving them to be disposed of by the law. There is no express gift to the wife; and if she takes at all, it must be by implication. Now, we do not know a case in which the doctrine, that a gift by will to A., after the death of B., is a gift to B. for life, by implication, has, under any circumstances, been applied to personal chattels. It belongs properly to estates of inheritance. With respect to them, it is settled, that a devise to the testator’s
 
 heir,
 
 after the death of A., implies an estate to A. for life, from the absurdity of the heirs talcing before A. dies, as he must do unless A. take. But where the devise is to one who is not heir, after the death of A., then it is equally well settled, that A. takes nothing; but the estate goes in the mean time to the heir at law. In the cases of
 
 Hutton
 
 v.
 
 *51
 

 Simpson, 2
 
 Vern. 723, and
 
 Willis
 
 v. Lucas, 1 Pr. Wms. 472, this doctrine of an estate by implication was extended to a devise to one of several co-heirs, after the death of the testutor’s wife; though, certainly, the implication is much less cogent than in the case of a sole heir. And in the cases quoted at the bar,
 
 Doe
 
 v. Summerset, 5 Bur. 2,608, and 2 Wm. Bl. 692, and
 
 Goodright
 
 v. Hoskins, 9 East. 306, terms for years were made the subjects of a similar implication. The latter case turned upon very peculiar words and circumstances, and can by no means be deemed authority for the general proposition, that a bequest of a term to A., after the death of B., gives the intermediate estate for B’s life to B., instead of the testator’s executor. One bequeathed a term to his son A. until B., a son of A., should attain 21, and no longer; but in case B. should die in his minority, then to C. and D., two other sons of A., or either of them attaining the age of 21, as aforesaid; and the testator desired that the premises might be quitted and delivered up by A. accordingly. The question was, whether B., who attained 21, was entitled? and it was held that he was. The Court relied much on the direction to A. to deliver up the possession, namely, when B. came of age; and it was asked to whom, unless to B? That circumstance does, indeed, point to B’s taking at 21; but alone, it is obviously inconclusive, since A. ought to deliver the possession to whatever person was entitled by the will or by the law. But that probability was strengthened by the devise over upon the death of B.
 
 before
 
 21; since there is something much like an absurdity in such a devise over, under those circumstances, unless B. should take,
 
 if die attained that age.
 
 But there is nothing of that kind in this will; which does not speak of the possession, until the period of emancipation; but simply makes a disposition of the slaves after the death of the wife; which is quite consistent with their being undisposed in the mean while. The case of
 
 Doe
 
 v.
 
 Summerset,
 
 was decided by two Judges only, and is so shortly stated in both books as to furnish no satisfaction as to the ground of the decision, except that the Court said the implication need not be a necessary one. The facts were, that the owner of a term for years, determinable on the lives of his daughter B., and of
 
 *52
 
 another person, C., bequeathed to his daughter, D., after the death of B., during the life of C.; and it was held that B. took for life. Perhaps the two daughters were, solely, the next of kin of the testator; and the case may have gone on something like the principle in
 
 Hutton
 
 v. Simpson, respecting the devise to one of two co-heirs. But it does not appear what reason brought about the judgment; and, certainly, the right of the executor interposes itself against any implication in favour of the daughter B. Besides, this case directly contradicts that of
 
 Horton
 
 v. Horton, Cro. Jac. 74; in which it was held, that a dpvise of a term to a son, after the death of his mother, did not imply an estate to her; since the executor, and not the son, would by law take such part of the term as was not disposed of. 'J'hat reason seems
 
 to
 
 us to have great force in it, and to be decisive, unless in cases in which there may be, as in
 
 Goodright
 
 v. Hoskins, very special provisions. But in this case, besides the general rule, as we understand it to be settled in
 
 Horton
 
 v. Horton, the provisions of the will tend to an opposite construction. All that the testator gives to his wife, is given in one sentence and for life, including a number of slaves. Then, we ask, if he intended her also to have these two for life, why their names are not £ound with those that are expressly given to her? It would haye been then easy for him to add, that after her death, such and such should go to his nieces, but these two, Ben and Nancy, should be liberated; and from the absence of such a provision, there arises quite a fair presumption on the other side, that the testator did not intend his wife to take these negroes for life. We think, therefore, thaf; the two Naves were, upon the death of the testator, assets to pay debts and legacies; and that thpir reasonable hires since, and their present value are, as a part of'the residue, applicable to (he legacy to Watson.
 

 But, if the residue be insufficient tp pay that legacy, after discharging the debts, the questions remain, whether the legacy shall fail
 
 pro tanto,
 
 or whether it shall be raised out of the other parts of the estate? His Honor held, that the legacies to the nieces were not at all liable, because they are specific, and do not abate with, or contribute to, general lega
 
 *53
 
 cies. That, we know, is the general rule — but there is an exception to it, within which, we think, this.case falls. If general legacy be expressly .charged upon a specific legacy, then, of course, it is payable thereout. So, if a pecuniary legacy be given, and there be no fund to pay it, or rather, if there never was any fund to pay it, except the specific legacies, owing to the fact that every thing is given away specifically, the necessary construction is, that the general legacy is to be raised out of the personal estate, although specifically bequeathed. For, it ¿s not to be supposed the testator meant to mock the legatee.
 
 Sayer
 
 v. Sayer, Pre. Ch. 393, Rop. Leg. 255, 3rd ed.—
 
 White
 
 v. Beattie, 1 Dev. Eq. 87, 320. This will descends so minutely into the enumeration of articles, that it is nearly to be inferred from the will itself, that it disposes, or professes to dispose, of all the property the testator had. But the answers, which are to be taken to be true, remove all doubt. They state that the testator left nothing, and had nothing, at the making of the will, applicable to the payment of this legacy, but such as he has given specifically. He left cash and debts due to him, to the amount of about $100; but he owed a larger sum. This we think a sufficient ground, of itself, for holding the specific legacies liable, without recurring to the direction to the executor to pay the pecuniary legacy “ out of such monieq as he may think fit.” Those words, however, strengthen ' the inference of the charge; because “ monies” could not mean cash on hand, (of which there was only about the sum of g20,) but meant cash to be raised by the sale or hiring of property.”
 

 Nor will this construction be affected by the circumstance that it has so turned out that there is a surplus applicable to the money legacy,, in consequence of the bequests for emancipation being void. The question is as to the intention of the testator at the making of the will; at which time, he did not anticipate any fund from this source. It is the good fortune of the specific legatees, that this surplus now unexpectedly exists; because, as far as it goes, it discharges them. But its deficiency, if any, they must make good; since the testar tor, indeed, expected them to pay the whole.
 

 The decree must, therefore, be reversed so far as it declares
 
 *54
 
 the legacy to William Watson not to be payable out of the specific legacies in any event; and a declaration must be made in conformity to this opinion. It must, then, be referred, t0 ascertain the sum due on the pecuniary legacy; and to take an account of the residue of the testator’s personal estate, (including therein the slaves, Ben and Nancy, and their reasonable hires and profits since the death of the testator,) and what debts of the testator have been paid, and out of what funds; and what remain to be paid; and of the charges of the administration; so as to shew gdiat sum the executor now hath or ought to have, applicable to that legacy. If it should thence appear, that the legacy can be paid without recourse to the specific legacies, the plaintiff can then be relieved as his bill stands. But if those legacies should be found subject for the whole or any part of the legacy, the plaintiff will be under the necessity of bringing in the other persons liable to contribution.
 

 Pbr Curiam. Decree accordingly.